FILED
2021 Nov-15 PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **JASON MAYFIELD,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 7:20-cv-01040-ACA** |
| } | |
| **COMISSIONER,** } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRTAION,** } | |
| } | |
| **Defendant.** } | |

### **MEMORANDUM OPINION**

Plaintiff Jason Mayfield appeals the decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL REVERSE** the Commissioner's decision.

**I.  PROCEDURAL HISTORY**

Mr. Mayfield applied for a period of disability and disability insurance benefits in August 2017, alleging disability beginning June 2, 2017. (R. at 301). The Commissioner initially denied Mr. Mayfield's claim (*id.* at 231–235), and Mr. Mayfield requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 237–238). After holding a hearing (r. at 173–210), the ALJ issued an unfavorable

decision (*id.* at 150–162). The Appeals Council denied Mr. Mayfield's request for review (*id.* at 1–4), making the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks

omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Mr. Mayfield had not engaged in substantial gainful activity since his June 2, 2017 alleged onset date. (R. at 152). The ALJ found that Mr. Mayfield's degenerative disc disease of the thoracic spine, degenerative disc disease of the lumbar spine, obesity, and major depressive disorder were severe impairments. (*Id.*). The ALJ then concluded that Mr. Mayfield does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 152–153).

After considering the evidence of the record, the ALJ determined that Mr. Mayfield had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he faced some additional physical, environmental, social, and mental limitations. (R. at 154). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that Mr. Mayfield was unable to perform any past relevant work. (*Id.* at 160). But the ALJ concluded that jobs existed in significant numbers in the national economy that Mr. Mayfield could perform, including final assembler, rotar assembler, and eye glass assembler. (*Id.* at 161). Accordingly, the ALJ determined that Mr. Mayfield had not been under a disability, as defined in the Social Security Act, from his alleged June 2, 2017 onset date through the date of the decision. (*Id.* at 162).

**IV. DISCUSSION**

Mr. Mayfield argues that the court should reverse and remand the Commissioner's decision for two reasons: (1) because the ALJ failed to properly evaluate the opinion evidence of record, and (2) because the ALJ failed to consider the side effects of his medication. (Doc. 14 at 6–15). Although the court has concerns about the ALJ's omitting any discussion of medication side effects from her decision, the court need not address that argument because the court agrees with Mr. Mayfield that the ALJ did not properly consider the opinion evidence of record concerning Mr. Mayfield's mental limitations.

Mr. Mayfield argues that the ALJ did not properly evaluate the opinion of his treating physician, Dr. Samuel Popkin or one-time examiner, Dr. Karen Clark[1]. (Doc. 14 at 6–15).

Mr. Mayfield saw Dr. Popkin, a VA Medical Center clinical psychologist, on several occasions in early-to-mid 2018 for treatment of his depressive disorder. (*See* R. at 756–762, 793–802, 814–817, 901–904). In May 2018, Dr. Popkin evaluated Mr. Mayfield for purposes of obtaining VA disability benefits. (R. at 813–819; *see also id.* at 825–826, 918). At that time, Dr. Popkin wrote a letter in which he opined that Mr. Mayfield was "unable to obtain or sustain gainful employment due to impairments in basic [activities of daily living], interpersonal skills and abilities and deficits, and inability to maintain concentration and attention to allow for even the completion of routine, repetitive tasks." (R. at 813). Dr. Popkin explained that he believed Mr. Mayfield's condition was chronic and his prognosis was guarded. (*Id.*).

Dr. Popkin also completed a questionnaire regarding Mr. Mayfield's mental ability to complete work-related activities. (R. at 818). Dr. Popkin indicated that Mr. Mayfield would be "unable to meet competitive standards" (meaning that with some exceptions from time to time, Mr. Mayfield could not satisfactorily perform a

---

[1] Mr. Mayfield's brief refers to Dr. Clark as a treating physician. (Doc. 14 at 6). Based on the court's review of the record, the court understands that Dr. Clark examined Mr. Mayfield on only one occasion, and therefore, she is not a treating physician because she did not have an ongoing treatment relationship with Mr. Mayfield.

5

particular activity independently, appropriately, and effectively in a regular, full-time work setting) in a number of areas, including: maintaining attention for two hour segments; maintaining regular attendance and punctuality within customary, usually strict tolerances; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruption from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavior extremes; dealing with normal work stress; setting realistic goals or making plans independently of others; dealing with stress of semiskilled and skilled work; interacting appropriately with the general public; traveling in an unfamiliar place; and using public transportation. (*Id.* at 818–819).

Dr. Popkin also indicated that Mr. Mayfield would be "seriously limited, but not precluded" (meaning that there would likely be days where Mr. Mayfield could effectively perform a particular activity, and three or more days a month on average when he would not be able to persist with a particular activity for at least ¾ of a full work day) in a number of areas, including: carrying out very short and simple instructions; sustaining an ordinary routine without special supervision; making simple work-related decisions; responding appropriately to changes in routine work

settings; understanding, remembering, and carrying out detailed instructions; maintaining socially appropriate behavior; and adhering to basic standards of neatness and cleanliness. (*Id.*). In addition, Dr. Popkin stated that he anticipated Mr. Mayfield's mental condition would cause Mr. Mayfield to be absent from work more than four days per month. (*Id.* at 819).

The ALJ found Dr. Popkin's opinions unpersuasive and offered three reasons to support her conclusion. (R. at 159). First, the ALJ noted that Dr. Popkin had treated Mr. Mayfield for only a "few months." (*Id.*). Second, the ALJ explained that Dr. Popkin's opinions were "not consistent with treatment notes or the record as whole," which generally showed that Mr. Mayfield was "cooperative and calm . . . with appropriate behavior, good eye contact, sufficient attention and concentration, and intact recent and remote memory" and which showed that Mr. Mayfield had "no loose associations or flight of ideas, . . . logical thought process, and no symptoms of psychosis." (R. at 519, citing R. 758, 761,766–767, 776, 787, 795, 798, 816, 838, 903, 910, 919–920, 944, 979, 990, 999–1000, 1017, 1029, 1045, 1057, 1086). Third, the ALJ noted that Dr. Popkin completed his opinions at Mr. Mayfield's wife's request for purposes of obtaining or increasing VA disability benefits. (R. at 519).

In June 2018, Dr. Clark examined Mr. Mayfield on one occasion and completed a mental disorders disability benefits questionnaire on behalf of Mr.

Mayfield for purposes of his application for an increase in VA disability benefits due to his major depressive disorder. (R. at 824–829). She noted that Mr. Mayfield's recurrent major depressive order, accompanied by anxious distress, caused occupational and social impairment in most areas, such as work, school, family relations, judgment, thanking and/or mood. (*Id.* at 825). Dr. Clark explained that Mr. Mayfield's wife reported that he was "isolating more" and spending time alone in his room with his dog. (*Id.* at 826).

Dr. Clark stated that if Mr. Mayfield were employed in either physical or sedentary work, he may have: (1) difficulty in positions with high emotional, cognitive, or social demands; (2) problems interacting effectively with supervisors, co-workers, and customers due to irritability and strong tendencies to isolate; (3) problems adapting to changes in the workplace or to new tasks; (4) difficulty tolerating high amounts of stress; (5) reduced work performance due to attention/concentration and short term memory problems; and (6) problems completing tasks correctly and efficiently. (R. at 829).

Dr. Clark noted that Mr. Mayfield's low motivation, reduced energy, and fatigue from sleep disturbance may at times cause tardiness or absences from work and problems maintaining stamina while on the job. (R. at 829). She also stated that Mr. Mayfield may have problems with reduced efficiency/productivity. (R. at 829).

The ALJ offered two reasons for finding Dr. Clark's opinion unpersuasive. First, the ALJ stated that like Dr. Popkin's opinion, Dr. Clark's opinion concerned VA disability benefits. (R. at 159). Second, the ALJ stated that Dr. Clark's opinion was "not entirely consistent with the record as a whole," as she had explained with respect to Dr. Popkin's opinion. (R. at 159, citing R. 758, 761,766–767, 776, 787, 795, 798, 816, 838, 903, 910, 919–920, 944, 979, 990, 999–1000, 1017, 1029, 1045, 1057, 1086).

Mr. Mayfield challenges the ALJ's rejection of Dr. Popkin's and Dr. Clark's opinions on a number of grounds.

First, Mr. Mayfield contends that the ALJ improperly substituted her opinion for that of Dr. Popkin and Dr. Clark. The court disagrees. An ALJ may not substitute her own opinion of a claimant's condition for that of a medical expert, *Freeman v. Schweiker,* 681 F.2d 727, 731–32 (11th Cir. 1982), or make medical findings herself, *Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992). But it is her responsibility to resolve conflicting medical opinions. *Watson v. Heckler*, 738 F.2d 1169, 1172 (11th Cir. 1984). Here, the ALJ did not refuse to credit Dr. Popkin's and Dr. Clark's opinions based on her own medical findings or her own impression of Mr. Mayfield from the hearing. Rather, she weighed competing opinions and offered explanations for why she credited certain opinions over others. Whether substantial evidence supports those explanations is a different question which the court examines in

9

further detail below. *See infra* pp. 11–16. But the court finds that the ALJ did not improperly assume the role of a medical expert in analyzing the opinion evidence of record.

Mr. Mayfield also complains that the ALJ improperly rejected Dr. Popkin's and Dr. Clark's opinions because they were offered in conjunction with VA disability proceedings. (Doc. 14 at 13–14). An ALJ may not evaluate the reliability of a report based solely on the purpose for which an examiner prepared the report. *See Tavarez v. Comm'r of Soc. Sec.*, 638 F. App'x. 841, 847 (11th Cir. 2016). However, here, the ALJ did not reject Dr. Popkin's and Dr. Clark's opinions on that basis alone. Therefore, this argument is not persuasive.

Finally, Mr. Mayfield contends that the ALJ's other stated reasons for rejecting Dr. Popkin's and Dr. Clark's opinions are not valid. (Doc. 14 at 13–14). The Commissioner responds that the ALJ properly evaluated the opinions under new regulations that govern claims like Mr. Mayfield's filed after March 27, 2017. (Doc. 15 at 12–17). Mr. Mayfield argues that the new regulations do not abrogate prior Eleventh Circuit precedent concerning evaluation of medical opinions. (Doc. 16 at 1–5). The court need not resolve this dispute because under either standard, the ALJ's consideration of Dr. Popkin's and Dr. Clark's opinions is inadequate.

Under the new regulations, an ALJ need not give any special weight to any medical opinion, including that of a treating physician. 20 C.F.R. § 404.1520c(a).

Instead, the ALJ considers the persuasiveness of a medical opinion using the following five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id.* at § 404.1520c(c). Supportability and consistency are the most important factors, and therefore, the ALJ must explain how she considered those factors. *Id.* at § 404.1520c(b)(2). The ALJ may, but is not required to, explain how she considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

The ALJ's analysis for why she found Dr. Popkin's and Dr. Clark's opinions unpersuasive does not satisfy her regulatory obligation. With respect to both opinions, the ALJ found that they were not consistent with other medical evidence of record, and she cited a number of normal mental health examination findings. (R. at 159). Even if this statement sufficiently addresses the consistency of the opinions with other evidence (and the court is not holding that it does), the ALJ's evaluation of both Dr. Popkin's and Dr. Clark's opinions wholly fails to explain how the ALJ considered the supportability of the opinions.

With respect to supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). There is nothing in the ALJ's analysis of either opinion that explains how she considered this factor. The court is not suggesting that an ALJ must use the term "supportability" or "supported" in a decision. But here, the ALJ's explanation for rejecting Dr. Popkin's and Dr. Clark's opinions offers no explanation regarding how she considered the extent to which Dr. Popkin and Dr. Clark provided support for their opinions. Accordingly, the ALJ's evaluation of Dr. Popkin's and Dr. Clark's opinions requires remand under the revised regulations.

Remand also is required under Eleventh Circuit precedent that pre-dates the new regulations. The Eleventh Circuit has held that an ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks and citation omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. at 1240–41. "The ALJ must clearly articulate the reasons for giving less weight to the opinion of

a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Opinions of one-time examiners are not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). But an ALJ still "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

With respect to Dr. Popkin, Mr. Mayfield claims that the ALJ's decision to reject the opinion based on Dr. Popkin's limited treatment relationship with Mr. Mayfield "fails to pass logical muster" because the ALJ found a non-examining state agency physician's opinion partially persuasive even though the state agency physician never examined Mr. Mayfield. (Doc. 14 at 13). The court agrees that Dr. Popkin's limited treatment relationship cannot constitute good cause for rejecting his opinion under these circumstances. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1260–61 (11th Cir. 2019) (rejection of treating physician's opinion based on sporadic treatment while crediting opinions of physicians who saw the claimant only once or not at all is not good cause).

Mr. Mayfield also argues that the ALJ's finding that Dr. Popkin's opinion is inconsistent with other medical evidence failed to explain why certain normal findings in a clinical setting is contradictory to Dr. Popkin's opinion about what Mr. Mayfield can do in work setting. (Doc. 14 at 13). In considering Dr. Popkin's opinion, the ALJ stated that the opinion was inconsistent "with treatment notes or

the record as a whole, which generally shows" that Mr. Mayfield "is a cooperative and calm individual with appropriate behavior, good eye contact, sufficient attention and concentration, and intact recent and remote memory." (R. at 159). The ALJ also found that Dr. Popkin's opinion was inconsistent with other treatment notes that showed "no loose association or flight of ideas, [] normal and logical thought process, and no symptoms of psychosis." (*Id.*).

But if an ALJ discounts a physician's opinion because it is inconsistent with other findings, an ALJ must explain how the "findings are genuinely inconsistent" with the medical expert's opinion. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1107 (11th Cir. 2021). "It is not enough merely to point to positive or neutral observations that create, at most, a trivial and indirect tension with the treating physician's opinion by proving no more than that the claimant's impairments are not all-encompassing." *Schink*, 935 F.3d at 1263. Moreover, particularly when—like Mr. Mayfield—a claimant suffers from mental or emotional disorders, in "evaluating a claimant's medical records, an ALJ must take into account the fundamental differences between the relaxed, controlled setting of a medical clinic and the more stressful environment of a workplace." *Simon*, 7 F.4th at 1107.

The ALJ's decision identifies no real inconsistency between Dr. Popkin's opinion and the cited treatment records. And Dr. Popkin's records and those of other providers explain in great detail Mr. Mayfield's ongoing and worsening symptoms

14

associated with his depression. For example, Mr. Mayfield complained of difficulty dealing with multiple stressors, including lack of sleep, anxious and depressive symptoms, racing thoughts, difficulty focusing, and paranoia. (R. at 551, 625, 827, 907). During one examination, Dr. Popkin agreed with Mr. Mayfield's wife's assessment that certain of Mr. Mayfield's behavior likely was paranoia associated with his PTSD. (R. at 814). Dr. Popkin also stated be believed Mr. Mayfield's symptoms "are bona fide ideas of reference that are likely psychotic features associated with his severe depression." (*Id.*). The ALJ's decision does not satisfy the court that she considered any of these findings, and under these circumstances, the ALJ's generalized statements that Mr. Mayfield was cooperative and calm and that he had appropriate behavior, good eye contact, sufficient attention and concentration, and intact recent and remote memory are not an adequate basis for rejecting Dr. Popkin's opinion. *See Simon*, 7 F.4th at 1107–08; *Schink*, 935 F.3d at 1263–64.

As for Dr. Clark's opinion, the ALJ also determined that the opinion was inconsistent with the same treatment notes she referenced in her discussion of Dr. Popkin's opinion. (R. at 159). Although the ALJ was not required to give Dr. Clark's opinion any deference, *see McSwain*, 814 F.2d at 619, the ALJ's explanation for rejecting the opinion was not sufficient for the same reasons described above with respect to Dr. Popkin's opinion.

## V. CONCLUSION

The court **WILL REVERSE** the Commissioner's decision and **WILL REMAND** for further proceedings consistent with this memorandum opinion. The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this November 15, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE